*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WALKER/HUGHES, Minors.

UNPUBLISHED
January 26, 2023

No. 361561
Kalamazoo Circuit Court
Family Division
LC No. 2019-000290-NA

Before: YATES, P.J., and JANSEN and SERVITTO, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order finding that termination of her parental rights to the two minor children, LW and RH, was in the best interests of the children. On appeal, mother argues that termination of her parental rights was not in the children's best interests because a less-restrictive means of ensuring the children's safety, i.e., guardianship, was available and appropriate. We affirm.

## I. FACTUAL BACKGROUND

Petitioner, the Department of Health and Human Services, requested the trial court to take jurisdiction over LW, RH, and their teenage brother, JW,[1] for failure to provide proper care and custody of the children, drug use, an unfit home environment, and failure to comply with services. The children were placed in foster care for a short period of time, but were allowed to remain in relative care for the balance of the proceedings. The children thrived in care overall, although JW experienced increased emotional turmoil throughout the case.

Mother inconsistently attended her parenting visits, but usually demonstrated appropriate parenting skills when she did attend. Mother completed parenting classes, a substance-abuse assessment, and a psychological evaluation. Further, mother and the children shared a strong bond. However, mother struggled severely with substance abuse throughout the case. Mother adamantly denied substance use, claiming at all times that positive drug screens were either falsified or not

---

[1] JW is not participating in, or is not considered a party to, this appeal. Also, mother's fourth child, HW, is not at issue in this appeal as the termination proceedings are still ongoing in that case.

hers, despite multiple caseworkers' explanations to the contrary. Mother also had a history of drug abuse dating back at least ten years, including two previous cases involving JW and Children's Protective Services. Moreover, mother's fourth child, HW, who was born almost 20 months into this case, tested positive at birth for the presence of drugs, including methamphetamine. Mother's substance-abuse assessment revealed that she suffered from high-severity drug use disorder.

Throughout the case, mother missed the majority of her drug screens and tested positive for methamphetamine on several occasions. Mother also left a family drug-court program and an inpatient rehabilitation program a short time after starting each program. Mother was terminated from numerous other services, including individual and group substance-abuse counseling and a parenting-coach program. Other issues included instability with housing and resources, mental and physical health struggles, and poor communication and participation generally.

Although mother did not attend the final termination hearing, she requested through her attorney that her parental rights be released to the children's grandmother. Petitioner agreed that a guardianship was proper for JW but opposed that option for LW and RH because of their younger ages and need for permanence. Moreover, petitioner agreed that LW and RH should be permitted to maintain a relationship with mother going forward. But the trial court found that termination of mother's parental rights to LW and RH was warranted pursuant to MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(c)(*ii*), and MCL 712A.19b(3)(j). The trial court also found that termination and adoption were in their best interests in order to promote permanence and a life without uncertainty, even though it was not in JW's best interests because of his older age. The trial court further found that LW and RH would likely be adopted because their maternal grandmother was willing to adopt them and could determine when it was safe for them to see mother. Mother now appeals.

## II. GUARDIANSHIP

On appeal, mother contends that the trial court's decision to proceed with termination was unconstitutional because a less-restrictive means of ensuring the children's safety and stability—guardianship—was available as an option. Mother argues that, pursuant to MCL 712A.19a(9)(c),[2] guardianship is a permanency option when termination is unnecessary or for children whose best interests are not served by their parents' rights being terminated. Mother's argument misapplies the statutes and caselaw to the circumstances of this case. According to MCL 712A.19a(9)(c):

> If the agency demonstrates under subsection (8) that initiating termination of parental rights to the child is clearly not in the child's best interests, or the court does not order the agency to initiate termination of parental rights to the child under

---

[2] Mother also cites, as another option, that the trial court could have chosen under MCL 700.5204, guardianship under the Estates and Protected Individuals Code (EPIC), MCL 700.5201 *et seq.*, which does not govern the formation of a guardianship in lieu of termination of parental rights under the Juvenile Code, MCL 712A.1 *et seq.* However, mother does not provide any argument regarding how a probate guardianship under EPIC may be applicable to a termination proceeding under the Juvenile Code, nor did she specifically suggest that the trial court consider imposing a guardianship under EPIC. Therefore, this Court need not reverse for plain error on account of this issue. See *In re Sanborn*, 337 Mich App 252, 267; 976 NW2d 44 (2021).

subsection (8), the court shall order 1 or more of the following alternative placement plans:

\* \* \*

(c) Subject to subsection (11), if the court determines that it is in the child's best interests, appoint a guardian for the child, which guardianship may continue until the child is emancipated.

Guardianship may only be considered when a child cannot be returned to a parent but termination is "clearly not in the child's best interests." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Moreover, under MCL 722.873(c), a "child is eligible to receive guardianship assistance" only if "[r]eunification and placing the child for adoption are not appropriate permanency options." Because adoption was possible and appropriate for both LW and RH, the guardianship option was properly excluded from consideration.

### III. BEST-INTEREST FACTORS

Mother next contends that termination of her parental rights was not in the best interests of LW and RH because mother has a strong bond with the children. Whether termination of parental rights "is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The best-interest determination focuses on the child, rather than the parent. *In re Schadler* 315 Mich App 406, 411; 890 NW2d 676 (2016). Factors a court may consider in deciding whether termination is in a child's best interests include: the child's bond to the parent; the parent's parenting ability; the child's need for permanency, stability, and finality; and the suitability of alternative homes. *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). Other factors include "the parent's compliance with [the] case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

At the termination hearing, the trial court emphasized that LW and RH needed stability and permanency, as opposed to the possibility of suffering because of uncertainty about their mother as they grow older. Mother's ongoing substance abuse and failure to participate in her case-service plan presented a continuing danger to LW and RH. The trial court found that their grandmother's home was suitable, their grandmother did well meeting the children's needs, and she was willing to adopt them. The trial court also noted that the children's young ages made chances favorable that they could be adopted. Although the trial court made clear that LW and RH should not remain in a home where mother could freely come and go as she wanted, the court encouraged adoption by their grandmother, who would have the discretion to decide when to prevent mother from seeing LW and RH and when to allow visits because it was safe for the children.

The trial court further indicated that it did not take its task lightly, especially in light of the children's bond and their ongoing relationship with mother. Thus, we are not left with a definite and firm conviction that the trial court erred when it found, on balance, that the relevant factors weighed in favor of termination. *In re White*, 303 Mich App at 709-710. Therefore, the trial court did not clearly err when it found, by a preponderance of the evidence, that termination was in the best interests of LW and RH.

Affirmed.

/s/ Christopher P. Yates
/s/ Kathleen Jansen
/s/ Deborah A. Servitto